UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION


MTS Systems Corporation,                                            Civil No. 06-3853   MJD/AJB

                       Plaintiff,

v.                                                      **REPORT AND RECOMMENDATION
ON MOTION FOR ATTORNEYS' FEES**

Hysitron Incorporated,

                       Defendant.


       This matter is before the Court, Magistrate Judge Arthur J. Boylan, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101, on defendant Hysitron, Inc.'s Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285. The motion is being considered by the court on the documents and without hearing. Allen Hinderaker, Esq., and Joshua Graham, Esq., represent defendant Hysitron, Inc. ("Hysitron"). David Pearson, Esq., and Brent Lorentz, Esq., represent plaintiff, MTS Systems Corp. ("MTS"). Defendant contends that MTS commenced this patent infringement action in bad faith, thereby qualifying the matter as an "exceptional case" in which an award of attorneys' fees under 35 U.S.C. § 285 is appropriate. Plaintiff insists that the suit was brought in good faith, on the basis of a plausible theory of infringement, and that an award of attorneys' fees is not justified under these circumstances.

       Based upon the file, affidavits, exhibits, memoranda and arguments of counsel, the magistrate judge **HEREBY RECOMMENDS** that defendant Hysitron's Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 be **denied**   [Docket No. 203].

Dated:     June 4, 2009

                                                  s/ Arthur J. Boylan
                                                 Arthur J. Boylan
                                                 United States Magistrate Judge


**MEMORANDUM**

**Background**

The parties in this patent infringement action are Minnesota corporations engaged in the development and production of precision testing equipment. Plaintiff MTS is the owner by assignment of a patent for a "Statistically Rigid and Dynamically Compliant Material Testing System," United States Patent No. 6,679,124 B2 ("'124 Patent"). The '124 Patent was initially issued to the inventor, Dr. Warren C. Oliver, on January 20, 2004. In early 2006, Hysitron announced its intent to produce and sell a new tensile testing device called the nanoTensile™ 5000 tensile tester. Hysitron had not yet manufactured such a device, and it was therefore displayed by way of a computer-generated image. Upon learning of the nanoTensile™ 5000 in April 2006, MTS advised the defendant of concerns that the Hysitron device infringed upon the '124 Patent. In response, Hysitron provided MTS with device design and operation information, including opinions by patent counsel, and denied that the nanoTensile™ 5000 infringed on the '124 Patent.

MTS commenced this action by complaint filed in the Northern District of California on May 11, 2006. The case was transferred to the District of Minnesota by Order

Granting Defendant's Motion for Change of Venue.[1] Hysitron subsequently moved to dismiss the complaint[2] pursuant to Federal Rules of Civil Procedure 37(b)(2)(c) and 11, asserting bad faith violation of the Pretrial Scheduling Order with respect to submission of an inadequate claims chart, and plaintiff's failure to adequately investigate and thereby establish a basis for its allegations of claims infringement. The magistrate judge recommended that the motion to dismiss be denied, and the report and recommendation was adopted by the district court[3] without prior objection. A claims construction hearing was held on March 13, 2008, resulting in the district court's issuance of a decision[4] favorable to Hysitron with respect to the principal disputed claim term in the '124 Patent. Shortly thereafter, MTS moved to dismiss its lawsuit, asserting its assignment of the patent to Agilent Technologies, Inc. ("Agilent"), and Agilent's purported lack of interest in continuing the suit. Hysitron did not oppose the motion to dismiss, but argued that the case should be dismissed with prejudice, though MTS was seeking dismissal without prejudice. The district court determined that dismissal with prejudice under Rule 41(a)(2) was appropriate in this instance.[5] Following the dismissal, defendant Hysitron filed the Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 that is now before the court. The motion has been referred to the magistrate judge for report and recommendation in accordance

---

[1] Order issued by United States District Court Judge Claudia Wilken on September 1, 2006.

[2] Defendant's motion to dismiss was filed on April 24, 2007. Hearing on the motion was held before the Magistrate Judge on June 20, 2007.

[3] Report and Recommendation filed July 2, 2007. Order on Motion to Dismiss dated July 25, 2007.

[4] Memorandum of Law & Order on <u>Markman</u> hearing, dated June 21, 2008.

[5] Memorandum of Law & Order granting motion to dismiss, dated December 1, 2009.

with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b).

**<u>35 U.S.C. § 285 Attorneys' Fees</u>**

It is defendant Hysitron's claim on motion for attorneys' fees that from the onset of this litigation MTS knew that Hysitron's device did not infringe the '124 Patent, and the case was therefore commenced and advanced in bad faith. Defendant asserts that a bad faith designation qualifies the matter as an exceptional case in which it is entitled to an award of fees under 35 U.S.C. § 285.[6] Hysitron seeks to recover the full measure of its attorneys' fees incurred defending this matter in the total amount of $949,826.43, as indicated by lodestar calculations based on varying hourly fee rates and documented time expenditures by multiple attorneys.[7] Plaintiff MTS does not challenge Hysitron's assertion that the defendant prevailed in this infringement action, but insists that Hysitron has not and cannot establish that the case was motivated by bad faith. MTS argues that this is simply not an exceptional patent infringement case as contemplated by 35 U.S.C. § 285, and in essence, Hysitron is wrongfully attempting to bootstrap its success on the merits of the patent action into an attorneys' fees claim.

**Prevailing Party.** A party in a patent action may be considered the prevailing

---

[6] 35 U.S.C. § 285 applies in patent infringement cases and states in entirety:

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

[7] Declaration of Allen W. Hinderacker in Support of Defendant Hysitron Incorporated's Motion for Attorneys' Fees (redacted billings by Merchant & Gould attorneys); Second Declaration of Allen W. Hinderacker (*In Camera*) in Support of Defendant Hysitron Incorporated's Motion for Attorneys' Fees (unredacted version of billings by Merchant & Gould attorneys); and Declaration of Michael D. Eggers (redacted billings for services related to this litigation by other firms–Dicke, Billig & Czaja, PLLC; Krause & Rollins, Chartered; and Gibson, Dunn & Crutcher LLP).

party for purposes of an attorneys' fees claim if it is successful in obtaining a favorable result on a significant issue relating to the overall objective of the litigation. Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). In this instance Hysitron obtained a favorable court ruling on a principal claim construction dispute (*i.e.,* the meaning of the term "base"). In addition, upon MTS' subsequent motion to dismiss the action without prejudice, the court determined that dismissal with prejudice was appropriate. MTS does not contend that Hysitron was not the prevailing party in the action, and the court concludes that the defendant was indeed the prevailing party for purposes of 35 U.S.C. § 285. See also Cognex Corp. v. VCode Holdings, Inc., 2008 WL 3261158, at *8 (D.Minn. August 7, 2008)(citing Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1183 (Fed. Cir. 1996)).

**Exceptional Case.** A court may label a case as exceptional when there has been some materially inappropriate conduct relating to the matter being litigated, such as willful infringement, fraud or inequitable conduct in obtaining the patent, litigation misconduct during the litigation, vexatious or unjustified litigation, conduct in violation of Fed. R. Civ. P. 11, or other similar misconduct. Brooks Furniture, 393 F.3d at 1381. In the absence of misconduct in obtaining the patent or misconduct in the litigation itself, sanctions are appropriate only if (1) the litigation is commenced in subjective bad faith; and (2) the litigation is objectively baseless. Id. (citing Prof. Real Est. Investors v. Columbia Pictures Indus., 508 U.S. 49, 60-61, 113 S.Ct. 1920 (1993)). The attorney fees' claim in this motion is not based upon allegations relating to patent procurement, litigation misconduct, willful infringement, vexatiousness, or Rule 11 sanction

justifications.[8] Rather, Hysitron's section 285 claim is wholly based upon bad faith, allegedly evidenced primarily by in-court colloquies between the magistrate judge and MTS counsel, statements by the inventor and an MTS technical expert, the plaintiff's apparent lack of a coherent infringement theory, and the district court's decision on a critical claims construction issue.

There is a presumption that a patent infringement claim is made in good faith. Brooks Furniture, 393 F.3d at 1382 (citing Springs Willow Fashions, LP v. Novo Indus., L.P., 323 F.3d 989, 999 (Fed. Cir. 2003)). Consequently, the underlying improper conduct, and the exceptional case designation, must by established by clear and convincing evidence. Id. at 1382 (citing Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989)). Furthermore, the ultimate decision on whether to award attorneys' fees, and the amount of such fees, if any, lies within the sound discretion of the district court, even when a case is determined to be exceptional. Id. (citing S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986)).

**Bad Faith Claim.** Hysitron's fundamental fact contention is that the MTS patent included an unequivocal requirement that both specimen holders be moveable, and the Hysitron device incorporated only a single movable specimen holder. Therefore, it is alleged that MTS

---

[8] Defendant Hysitron's initial motion to dismiss this case, filed on April 24, 2007, was based in part upon its contention that the action was commenced in bad faith and should be dismissed pursuant to Fed. R. Civ. P. 11. The magistrate judge denied the motion with the express determination that MTS had conducted its pre-suit investigation in good faith and the information provided to MTS was sufficient to support the inference that the Hysitron device infringed the '124 Patent. (Report and Recommendation filed July 2, 2007, adopted by Order on Motion to Dismiss dated July 25, 2007). Rule 11 is not presented to the court as a basis for attorneys' fees in the motion now under consideration.

commenced this action in bad faith, knowing that Hysitron's testing device did not infringe on MTS' '124 Patent. For its expression of the legal basis for its fees claim, defendant directs the court to Eltech Sys. Corp. v. PPG Indus., Inc., 710 F.Supp. 622 (W.D. La. 1988) aff'd, 903 F.2d 805 (Fed. Cir. 1990) wherein the district court stated:

> The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the accused infringer.

Id. at 636. The appellate decision in that case recited this principle in a notably more direct and specific fashion, therein stating:

> . . . . the reasonableness of the patentee in assessing infringement [is] a proper consideration. Where [ ] the patentee is manifestly unreasonable in assessing infringement while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence. The alternative, abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law and a violation of Rule 11 . . .

Eltech Sys. Corp., 903 F.2d at 811.

Hysitron alleges that MTS commenced the infringement action in bad faith as evidenced by MTS's refusal to properly acknowledge the critical significance of the "two moveable specimen holders" claim specification, and MTS's improper reliance on a "preferred embodiment" theory of infringement. In support of its position, Hysitron cites the district court's rejection of the inventor's effort to characterize the nanoTensile 5000 as an alternative embodiment of '124 Patent claims, and argues that MTS' reliance on an embodiment theory of infringement analysis is contrary to basic patent law. According to Hysitron, further evidence of plaintiff's subjective bad faith in commencing suit is manifested by MTS' inability to construct a claim chart that disclosed a valid theory of infringement. Also, MTS submitted an

7

amended claim chart that failed to specify the location on Hysitron's device at which each element of each claim was found, and MTS relied upon future discovery to obtain evidence of infringement, to the presumed dissatisfaction of the magistrate judge.[9] Finally, Hysitron insists that MTS' second amended claim chart relied upon a contrived "base as a frame of reference" theory that was rejected by the district court pursuant to a claims construction determination that the term "base" refers to an actual physical structure and is not properly construed as a frame of reference.

In opposition to Hysitron's attorneys' fees claim, MTS argues that the defendant has not established bad faith under circumstances whereby several independent counsel considered the matter and concluded that an infringement suit had merit. Hysitron insists that its claims construction and infringement theories were plausible and not frivolous, and therefore the

---

[9] (Platt Decl. Ex. 24), Transcript of hearing before the magistrate judge on May 14, 2007:

THE COURT: But how do you make any kind of an infringement analysis if in your claims chart it says the first specimen holder says material testing system figure 1 includes a first specimen holder B, B1, or C. And then I take a look at second specimen holder and your claims chart says the material testing system of figure 1 includes a second specimen holder B, B1, or C. It doesn't tell me anything. (Tr. 23-24).

The transcript further recites:

THE COURT: But, you know, you're the plaintiff. You're the ones who applied for the patent. You know what the claims are and what the claim meanings are in your view. You brought the claim against the defendant. It would seem to me that the claims chart is the process by which you're asked to, right off the bat, make a determination of what those claim meanings are rather that wait until all the discovery is done and then tell us what the meaning of the claims are. (Tr. 26).

litigation was not objectively baseless. In addition, MTS contends that the law of the case doctrine precludes this attorneys' fees motion because the magistrate judge has already determined that the case was commenced on the basis on information sufficient to support an infringement claim.

**Discussion**

Defendant Hysitron's argument for an award of attorneys' fees under 35 U.S.C. § 285 focuses almost entirely on the lack of merit to plaintiff's infringement claim, and does not rely upon allegations of litigation misconduct, fraud in obtaining the '124 Patent, or the like. Defendant's position in that regard is, in essence, a product of the district court's decision[10] on claim construction which essentially established Hysitron's status as the prevailing party in the case. On the basis of the Markman decision and the dismissal with prejudice, along with the claims chart history and statements by the inventor and plaintiff's expert, defendant urges the court to find that the action was commenced in bad faith and is therefore an exceptional case under the fees statute. In this regard, Hysitron contends that MTS knew from the onset that the defendant's testing device did not infringe the '124 Patent, and the case was therefore commenced in bad faith. To make a necessary leap, defendant apparently relies upon the district court's statement in Eltech Sys. Corp. v. PPG Indus., Inc. to the effect that a case may be declared exceptional when the patentee knows the suit is baseless or should have known the suit was baseless upon reasonable investigation. Eltech, 710 F.Supp. at 636. Though the district court's decision in Eltech was affirmed on appeal, the circuit court was somewhat more explicit in describing the nature of circumstances justifying an exceptional case designation such that the

---

[10] Memorandum of Law & Order on Markman hearing, dated June 21, 2008.

declaration may be made where the patentee is manifestly unreasonable in assessing infringement, while continuing to litigate the issue. Eltech, 903 F.2d at 811. The circuit court in Eltech noted the existence of overwhelming evidence indicating that the patentee in that case had actual knowledge that the suit was baseless and further discussed the patentee's complete failure to conduct pre-suit investigation in the form of appropriate testing to establish infringement. Id. at 810. In terms of application, the Eltech appellate decision is substantially more demanding than defendant Hysitron suggests, and is not inconsistent with the subsequently stated legal test whereby sanctions under 35 U.S.C. § 285 are appropriate only if (1) the litigation is commenced in subjective bad faith; and (2) the litigation is objectively baseless. Brooks Furniture, 393 F.3d at 1381.

In the present case, Hysitron has merged the above-stated factors by staunchly arguing that MTS knew all along that its patent was not infringed, and that the litigation was therefore meritless and commenced in bad faith. The argument completely evades the question of whether there is independent evidence of subjective bad faith and largely overstates the strength of presumed evidence that this litigation was objectively baseless.

While the court has already made claims determinations that allow Hysitron to assert that it is the prevailing party, such decision alone does not establish that the litigation is baseless. Moreover, the Markman decision, along with statements of the inventor and the plaintiff's expert, do not persuasively establish that the case was wholly without basis, either at the outset or at any time during the litigation. Importantly, on motion to dismiss following MTS' submission of its first two claims charts, and giving due consideration to deposition testimony of

the inventor, Dr. Warren Oliver,[11] and technical expert Dr. Ravi-Chandar,[12] the magistrate judge expressly found that adequate pre-suit investigation had been conducted and there was information sufficient to justify an inference that the Hysitron product infringed, particularly under circumstances in which MTS was seeking to protect its patent rights with respect to a device that could not be inspected because no commercial embodiment existed.[13]

---

[11] (Platt Decl. Ex. 29), Dr. Oliver Dep. Tr. at 59:1-8.

> Q: So the lower specimen holder is not moving or being displaced. It's the crosshead that is moving or being displaced.
>
> *** (objection)
>
> A: It's - right. In that particular embodiment identifying the foundation as that part, then that end of the specimen holder does not move relative to that foundation.

[12] (Platt Decl. Ex. 23), Dr. Ravi-Chandar Dep. Tr. at 25-26.

> Q: You mentioned that in your reading of the patent there are two specimen holders, one called the first specimen holder and the other called the second specimen holder.
>
> A: Yes.
>
> Q: And as you read the patent, did you understand that there was an intention that the two specimen holders would be able to each move?
>
> A: Yes.
>
> Q: And with the two specimen holders each moving along a common axis, they are moving relative to each other.
>
> A: Correct.

[13] Report and Recommendation dated July 2, 2007, pp. 4-5. MTS contends that this motion for attorneys' fees is barred by the law of case because the magistrate judge has already explicitly concluded that "MTS conducted their investigation in good faith into whether the Hysitron device infringed the '124 patent and the information provide to MTS was sufficient to permit a reasonable inference that the Hysitron product infringed." Report and

11

Upon re-evaluation of the same material and circumstances, the court finds no reason for now construing the information as evidence of subjective bad faith, and the district court's claim construction decision does not mandate any different outcome. Indeed, the Markman Memorandum of Law & Order, though conclusively establishing Hysitron as the prevailing party, contains no explicit language to suggest that bad faith might have been a motivating factor in this litigation, and further, the decision certainly does not lead to an inference, based on clear and convincing evidence, that MTS commenced the action in subjective bad faith or that the litigation was objectively baseless. See Brooks Furniture, 393 F.3d at 1381. The district court's legal conclusions on claims construction and infringement simply do not mandate the inference that either the inventor or MTS' technical expert had prior knowledge that this legal conclusion was inevitable. The fundamental flaw in defendant's position is the utter lack of direct evidence of subjective bad faith, and the consequent reliance on rather unpersuasive inferences derived from statements and court decisions relating to substantive issues in the case. Moreover, the court finds no grounds upon which to discredit the evaluations on possible infringement made by initial MTS attorneys, as well as multiple substitute counsel, to the extent that the plaintiff's counsel were acting on the basis of good faith assessments of the merits of the infringement action. In effect, the position of MTS' lawyers significantly diminishes the already weak impact of Hysitron's argument with respect to both subjective bad faith and the contention that the litigation was baseless. Finally, MTS' ultimate

---

Recommendation, page 5. The court herein declines to ascribe law of the case status to the conclusion because the decision was rendered in the context of a Rule 11 motion rather than under 35 U.S.C. § 285. Nonetheless, the court now finds insufficient evidence to support a contrary conclusion or a different view of the particular facts and circumstances that supported the prior conclusion.

decision to move for voluntary dismissal of this case without prejudice rather than with prejudice is simply not clear and convincing evidence of MTS' subjective bad faith, either alone in the context of the entire litigation history.

**<u>Attorneys' Fees</u>**

In light of the magistrate judge's recommendation on the underlying grounds for Hysitron's claim for attorneys' fees under 35 U.S.C. § 285, the court, of course, also makes no specific recommendation regarding an amount of attorneys' fees that would properly be awarded to Hysitron as a sanction for MTS' misconduct. Nonetheless, the ultimate determination as to whether this case should be declared an exceptional case, and fees should be awarded, remains with the district court. Therefore, the defendant's billings statements and the arguments of counsel with respect to attorneys' fees have been reviewed and considered by the magistrate judge.

Hysitron contends that all of its attorneys' fees were necessary and reasonably incurred, and it is entitled to all fees accumulated since commencement of the action in the total amount of $949,826.43, as based upon lodestar calculations. MTS denies responsibility for any of defendant's attorneys' fees, but argues that, in any event, the fees request is grossly excessive and insufficiently documented. In the event that this case is deemed by the district court to be an exceptional case under 35 U.S.C. § 285, the decision whether to make an award of attorney fees is still within the discretion of court. <u>Cognex Corp.</u>, 2008 WL 3261158, at *10 (citing <u>Superior Fireplace Co. v. Majestic Prods. Co.</u>, 270 F.3d 1358, 1378 (Fed.Cir. 2001)). In its exercise of discretion the court may weigh intangible as well as tangible factors, including the closeness of the question, litigation behavior, and other factors warranting the use of fee shifting as an

instrument of justice. Cognex Corp., at *10  Ultimately, an award of attorneys' fees is not mandated even in an exceptional case under section 285.  Id. (citing Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 815 (Fed.Cir. 1990)).

**Lodestar Calculations.**  An appropriate method for determining reasonable attorneys' fees is the lodestar method.  Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002).  Under this method, the reasonable amount of hours spent on the case is multiplied by a reasonable hourly rate.  Id.  The resulting rate is presumed to be reasonable.  City of Riverside v. Rivera, 477 U.S. 561, 568 (1986).  This figure, however, may be adjusted at the discretion of the district court after considering factors that are relevant to that particular case.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).[14]  The most critical factor in the fixing of a reasonable fee is the overall success obtained.  Fish, 295 F.3d at 852 (citing Hensley, 461 U.S. at 436). "Assessing the reasonableness of a fee requires us to consider the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." Jenkins v. Missouri, 127 F.3d 709, 718 (8th Cir. 1997).

---

[14]     Factors that the court may consider are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley at 430 n.3.  See also Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

To determine a reasonable hourly rate, the court should consider the prevailing market rate for similar services in the community where the litigation takes place when performed by "lawyers of reasonably comparable skill, experience, and reputation." McDonald v. Armontrout, 860 F.2d 1456, 1458-1459 (8th Cir.1988). The burden is on the fee applicant to show that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). In the present matter, MTS does not argue that the various Hysitron attorneys, including senior partners, were charging excessive hourly rates, in light of the prevailing rates for comparably qualified patent attorneys in Minnesota, except to the extent that senior attorneys may have been working below their pay grade. As to the actual time devoted to the case by Hysitron lawyers, MTS contends that the hours incurred are not sufficiently documented and are not organized in a manner that allows proper evaluation as to reasonableness. MTS also insists defendant is precluded from recovery of fees relating to litigation activities occurring prior to the magistrate judge's good faith determination in his June 29, 2007, Report and Recommendation.

The purpose of awarding section 285 attorneys' fees is to sanction behavior that exceeds reasonable litigation tactics. Id. (citing Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1575 (Fed.Cir. 1996)). Despite Hysitron's characterization of the plaintiff's patent enforcement efforts, MTS actions were not outside the province of reasonable litigation tactics. Similarly, Hysitron's overall response to MTS' litigation endeavors, manifested by the active participation of two Merchant & Gould senior partners, Allen Hinderaker and Tong Wu, and a supporting cast of associates and lawyers with other firms, was not patently excessive or

otherwise unreasonable, and the time expenditures underlying the charged fees are not inadequately documented. As to MTS' sarcastic criticism of fees incurred as the result of over reaction to MTS' own "allegedly" frivolous and absurd claim interpretations, the argument does not merit further comment, much less a discount in attorney fee charges.

Upon review of billing statements by Hysitron counsel, the court is not persuaded that any part of the total attorneys' fees claim in the amount of $949,826.43 was improperly incurred or requested. Patent litigation is notoriously expensive. The court finds that the time spend by Hysitron's counsel has been adequately documented and necessarily incurred. The court further finds that the charged hourly rates, including those assessed by multiple senior attorneys, are reasonable in light of the nature of the litigation. Finally, in light of defendant steadfast contention that this matter was prosecuted in bad faith from the outset, along with the magistrate judge's determination herein that the prior "good faith" conclusion is not the law of the case, the court concludes that Hysitron reasonably incurred attorneys' fees in the amount of $949,826.43 in defending this infringement action from the beginning. However, for reasons stated above, the magistrate judge recommends that the district court decline to designate this matter an exceptional case under 35 U.S.C. § 285.

AJB

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before June 18, 2009.